Good morning, Your Honors. If it pleases the Court, applying USERRA liberally, as Congress intended, requires reversal in this case because the District Court's application of that statute was inconsistent with the way it was written, its intent, and the District Court's ruling effectively penalized my client for going overseas to serve our country in a time of war. As we pointed out in our briefing papers, USERRA was enacted in 1994, but it is a continuation of an unbroken line of cases since the 1940s, which have protected service members who have answered the call of the colors and gone to serve our country. The purpose of the statute is to ensure that those service members are entitled to every benefit that they would have received had they remained and not served our country and gone off to serve. That was the backdrop for the enactment of USERRA in 1994. With respect to that statute, in this case, the plain statutory language should be what controls, and the language, if it doesn't require extrinsic interpretations or legislative history, it should be interpreted as it's written. As Congress intended, and the cardinal rule in that regard is to read the statute as a whole, and we cited the Francis case at page 420 of the record. Also, if there are two plausible interpretations, then the one that favors the service member is the one that should apply. In this case, we have an incorrect interpretation of section 4311 because the district court applied a better interpretation that was used by the Seventh Circuit, relied upon in the Cruz and Gross cases, although those cases were heard prior to the 2011 amendment of USERRA, which was intended to clarify the benefits due to service members. Can I just ask you, the union and the employer have a USERRA policy, and I take it you don't claim that the policy itself violates USERRA? You're just saying this policy was misapplied as to your plan? That's correct, Your Honor. Okay. The way it was misapplied is the statute says that any benefit of employment should be due to the employee when they return. The Gross case and the Cruz case, what they do is they apply the better interpretation approach instead of the plain meaning approach. And to the extent that the benefits referenced in 4311A are different as provided to both military and non-military members, that means that Congress intended for that to be the case. And to the extent that 4311 applies to any benefit of employment, whereas 4316 subsection B1B does not, that means that my client should have been entitled to the hours credit that he sought and actually was originally granted by the appellees prior to their decision to reverse course and deny him those opportunities after several years when he was reemployed pursuant to their own USERRA policy. You're saying that the benefit of employment is the hours credit. That may be right, but, I mean, isn't the underlying benefit here the Class B status? That's what he – the hours are just a way to determine your status in the longshoreman hierarchy, and your client wants to be Class B, and that is clearly available to both military and non-military people alike. It is, Your Honor, and the hours credit are the mechanism in order to be able to attain these steps, and that's why they're significant because there aren't always promotions to B-level longshoremen, and that's a significant promotion that carries with it a significant increase in income, along with benefits, opportunities to work more. It is truly a massive benefit of employment in order to be promoted to a Class B longshoreman. Does the hours have any meaning for an employee other than to determine their escalation to a higher status? In other words, here you think if he got the hours, he would be Class B. Do the hours have any other significance for him as an employee? I don't believe so. I think the primary significance is the only significance is the elevation to a limited member of the Union, which is a Class B longshoreman, and that's why it's based upon a gross number of hours for the various applicants. They don't distinguish between the type of work that they're doing or necessarily when they became a longshoreman. The operative and determinative provision is how many hours credits they have, and when the employer determines there's a need for promotions, they accept the individuals with the highest number of hours, and the number of promotions are given to the folks that are the highest ranking on that list, according to the employee's policy. I think dealing with this is a five-year issue because the district court didn't address that in terms of he was gone for more than five years in the service. You claim he's subject to an exception. That was not resolved below, and as far as I can tell, that starts to present some fairly novel issues of what kind of proof one needs to demonstrate that you were essentially needed for a wartime effort. That's a great point, Your Honor, and the five-year rule does not apply because of the declared war or national emergency. The record is clear that the majority of my client's time was spent overseas in direct support of the global war on terror, and so the five-year limit would not apply. In the Applease policy, which is set forth at the record at page 53, only required my client to provide available documentation of the length and character of service and the nature of his discharge, and that's exactly what he did. If the Applease had wanted more, they could have asked for more, but instead they accepted what you provided to them. They reemployed him. They told him he was going to be promoted to be longshoreman, and then several years later they determined that he wasn't going to get those things and asked for new information when they could have asked for that same information several years prior. Counsel, so Applease did not provide the USERRA benefit explicitly because he exceeded the five-year limit, is that correct? That is correct, Your Honor. So why isn't it the case that they discriminated against him on the length of service rather than his service in the military? Well, those things are part and parcel. The same from my standpoint, Your Honor, because the fact that they would deny him based upon the character of service when he was serving overseas, the fact that he was supporting our country as part of the global war on terror, that in and of itself discriminates against him on the basis of his service, and the fact that the time involved clearly, with respect to the service involved in the global war on terror, does not apply. The other time clearly does not exceed five years. And so, anyway, from that standpoint, they clearly discriminated on both bases. Can I ask you a question? If your client had served four years, 364 days, he would have been entitled to the benefits that you're seeking, correct? That's correct, Your Honor. Under the statute, if he had served five years and one day, he would not have been entitled to the benefits, is that right? That depends, Your Honor. It depends on whether the five years were not subject to an exception. And in this case, the passage. I understand the exception. But let me ask you one more question, and that is this. So if your client had served five years and one day, would your client not get any credit at all for the previous four years, 364 days? In other words, if he had served that extra two or three days, he would have gotten no credit at all, at all. But if he had served three days less, he would have gotten four years and 364 days of credit. Do you understand what I'm saying? I do, and I believe that would be the proper interpretation of the statute within the context of the employer appellee being able to request documentation regarding the time and nature of the service and the character of the discharge. And in this case, they did that. The law is clear that they cannot demand documentation which doesn't exist or which is not readily available. That's at 20 CFR 1002.122. And in this case, they requested documents from my client. He provided everything that they requested, and on that basis, they reemployed him. I believe it would be an incorrect interpretation of the statute after that point to revoke what they previously agreed he was entitled to on the basis of the five-year rule when it was their obligation to request documentation in that regard at the time he sought reappointment. Right, but they're not required to take him at face value. I mean, I think this is the crux of the case is what did he need to provide to demonstrate that he met the exception? And, you know, he has sort of his own view of what happened. He has some limited documentation, and none of this was really dealt with in the district court as far as I can tell. I mean, there was some discovery. It looks like the district court didn't cut off the train before we got to this point. And, Your Honor, that's part of the reason where the district court erred because the record is clear that upon returning from service, my client sought reemployment, and he provided every document that was requested of him. It's the employer's obligation to determine whether or not the employee is eligible for reemployment under the policy or the statute. And in this case, after requesting documentation that was provided by my client, and looking at that documentation, having the opportunity to ask for more, they determined that he was eligible and reemployed him, which shows that the appellees themselves believe that this policy applied to my client. Yet, when it was time for him to actually get promoted and get a big pay raise, it appears they decided that he didn't qualify. According to the phrase, the exception says, Order 2, are retained on active duty other than for training under any provision of law because of a war or national emergency declared by the President or the Congress as determined by the Secretary of Concern. So what does that as determined by the Secretary of Concern mean, and how does that factor into what your client may need to show you? Well, some of the documents that the appellees would have been able to request, Your Honor, would have been my client's orders relating to the various stations where he served, and on those orders there may have been documentation relating to something from the Secretary of Defense with respect to serving our country in a time of war, and the particular service that my client was ordered to serve. In this case, the appellees had the opportunity to request that documentation. They chose not to request that documentation, but instead relied upon the documents they did request. And under that scenario, it would be inconsistent with the statute and unfair to my client to allow them to subsequently determine that he is not eligible. Several years later, when they could have requested those documents several years previously. All right. So that's a separate violation that you set around, the fact that they didn't request further documents on the five-year exception? Or are you saying that we just have to accept that he meets the five-year exception because they didn't ask for further documents? I think it's both, Your Honor. I think it shows the discriminatory intent of what the appellees are doing to the extent that they accepted him and they re-employed him. Yet when it became time for him to actually get that promotion, when other people were being promoted, he would have been part of that group to pull the rug out from under him because they simply didn't want to pay higher wages and benefits, which appears is exactly what happened here, including a side of the hours that he would have earned serving overseas when he was an active duty member of the Air Force. The district court also denied his hours for Air National Guard training, and clearly the five-year rule could not apply to his Air National Guard hours. So even if somehow it's determined that he is not eligible for the vast majority of hours that he would have accrued while he was serving as an active duty member of the Air Force, he should clearly still be entitled to the more limited number of hours that he earned when he was drilling for the Air National Guard, again in support of our country, on weekends after he became re-employed. Okay, we're taking you all the way down, so why don't we put two minutes back up for rebuttal just to make sure you have a chance to respond, and let's hear from your opposing counsel. Theodore. Thank you, Your Honor. Good morning. May it please the Court, Thomas Peterson for the appellees. I'm going to start with the notice of question that the Court has just engaged on. So it is the case that the statute has this requirement that in order to qualify under USERRA, the service can't exceed five years subject to the periods that are accepted. So Judge Bumate asked the question of whether there's a claim of discrimination with respect to how the five years are interpreted. I don't think that's the right way to characterize it, Your Honor. I think the way to characterize it is you have to determine this gateway question of whether or not there's more than a five-year service in order to figure out whether you even get into analyzing the framework of the USERRA case before the benefits start, and I think Mr. Anderson acknowledged in response to Judge Bumate's that that demarcation line does matter in terms of getting benefits, and if you exceed the five years and it's not excluded time, then USERRA simply isn't implicated. Let me then point out on the subject of documents and what documents there are. This case was put before the district court on largely stipulated facts, and the plaintiff agreed that there are no additional documents other than the ones that are before the court. It's also clear under this circuit's precedent of the Wallace case in particular that there are no additional documents other than the ones that are before the court. And just to say what you just said, you said the Wallace case in particular, and then you froze on us, and so we want to make sure you can pick up where we last heard you. This case says that in order to show eligibility under USERRA, the burden is on the plaintiff. So I heard Mr. Anderson suggesting that somehow my client had to go, you know, get his orders or some other documents. You know, he could have gotten them and he would have had them at some time, and indeed the record adds one of his orders, which involves the time when he was sent to Iraq. So, I'm sorry, to Kuwait. So you can't say it's a case where there was any additional burden on my client. Let me also, just for purposes of clearing up some background items, Mr. Anderson says that my client was rehired under USERRA. No, he was rehired, but we didn't have any obligation to rehire him under USERRA. We'll talk about that a little more when we get to reasons of the fact that he didn't satisfy the five-year requirement. And the fact we rehired him doesn't impose on us USERRA benefits, which aren't established if he can't show compliance with the five years. I appreciate, as Judge Grass, your questions, I think, honed in on the problem in this area, which is that there's really very little illumination about what this statute requires. However, I think there's one very important factor to keep in mind, which is Congress amended it. When it was originally enacted in 19—I'm sorry, Your Honor, Judge Bumate, you— I'm sorry to interrupt, but the way you framed it from the start, you said that the five-year—the question of five years of service is the gateway question, but the district court didn't do that, so should we rehearse on that basis? No, Your Honor, I don't think you should, because you have, as I said, almost entirely stipulated facts, certainly with respect to the notice question. You have all the documents, and you have a stipulated fact that there aren't any more. And so I think you've got—you have it all, and there really aren't conflicting inferences. But the district court didn't make a ruling about it in the first instance, so why shouldn't we just set it at that for the district court to make that gateway question ruling, and then we can review it after that? Because we moved on the ground. There's no dispute in the facts, and it's a question of why I think which court is as well-suited to deciding at this point as opposed to later. And I do think there's a way—I think there's also a way to address it, which doesn't require you to dig too deeply or have to articulate a lot of legal principles, and that is this. If you look at the documents—so first there's this important change in the law that took place. Before, when the statute was originally enacted in 1994, the five years was satisfied if you were serving during the time that the United States was involved in war or a national emergency. Nothing about the secretary. In 1996, it was specifically amended to add the requirement that there has to be some determination by the secretary. And it also says that you're serving because of a determination, essentially, that you are necessary in this context. If you look at the documentation that is in the record, we have a voluntary enlistment in 2004, which doesn't talk anything about war or a national emergency. We've got a re-enlistment in November of 2007. Then we've got another re-enlistment in August of 2012. Again, none of those things talk about the motivation of re-enlistment or whether the military was demanding it or certainly if the secretary had anything to do with it. There's one period, and I think this gives you some illumination of the kind of document which might be relevant, which are his orders to go to Kuwait. In those orders, which are in the record at ER 148, they do say, quote, purpose, participate in operation, in supporting operation, enduring freedom. Now, that at least isn't more so. It ties this to something which perhaps under a liberal construction, you could view as sufficient to support a showing, but he was older. We lost you, Mr. Spears. I think you were about to say something that's important. You told us about ER 148, pick up where you were, because you could have that. That is the only document I think that under a liberal construction you could give him credit for, but it only gets him six months' worth of credit in circumstances where he served for nine years in a month and he testified, another undisputed fact, that for a while he intended to make a career out of military service. And that document says, purpose, participants in operation, in supporting operation, enduring freedom. If you just assume that's enough, it's still not enough to take him anywhere near the five years of service. And let me just round out this topic by mentioning the point about the National Guard service. The five years requirement under the statute is a cumulative requirement. 43-12-82 talks about the fact that the five years is a cumulative requirement, so once you've exceeded the five years, you can't then come in and say that I'm entitled to other credit for other service, unless I've already sort of run through the five-year law. Now let me move back then to the other, unless the Court has questions on notice, let me move back. I do have questions on notice still, if you don't mind. Is there anything he can provide by way of his own oral testimony that would fill in the gaps for the employer, or is it your position that it has to be documentary? No, I think he can provide oral testimony, but even if you credit his oral testimony in this case, there's nothing which shows any linkage of any of this to any sort of military type command decision that could be linked back to the Secretary. I mean, there's nothing that suggests his initial enlistment on a volitional level enlistment had anything to do with the Secretary. The Secretary of what? The Defense or the Air Force. It would be the Secretary of the Air Force, Your Honor, would be the relevant authority. Does he need to have some kind of signed document by the Secretary of the Air Force? No, I don't think so. Your Honor, I think the way this can come up, and this isn't in the record, but I think the way it can come up is that there are times when people are issued orders that have commands in them. That is how people can satisfy this requirement in other cases, but you don't have anything like that here. And what I'm suggesting is as a liberal construction, you can at least credit to him the one order that he has that has the language that I read to you about linking it to the operation. Excuse me. I don't have the statute in mind right now, but I thought that there was a statute that said that if there is no documentation that exists in support of the claim, that that does not disqualify the applicant from getting the benefits. In other words, if all he has, which I think is his claim, if I'm not mistaken, is that he was orally told to reenlist, if there's no documentation, then unless there's some rebutting evidence, don't we have to accept his testimony or his statement to that effect under the statute? Your Honor, I think what you may be recalling is the Regulation 20 CFR Section 1002.112. It talks about the absence of documentation, but that specifically refers to it not being relevant to a delay in the reemployment. He was reemployed, and as I said, we take the position we did that because we wanted him back, not because you said it required us to do it. But it doesn't obviate the need for him to commit at the proper point and produce a relevant documentation. And as I said before, under the Wallace case, I mean, he has the burden. You know, the assumption that's being made here is that because the documents haven't been produced, that they exist, but I think the better answer is they don't. But if they don't exist, but let's assume hypothetically that they don't exist, okay, that in fact he was orally ordered to reenlist, okay, what could he possibly produce to establish the fact that he was ordered to reenlist? I mean, to me it's a non-sequitur. Well, Your Honor, his testimony was that someone where he, you know, a commanding officer where he was stationed had told him that he should reenlist. I'm sure that probably happens all the time, or at least people are encouraged. I don't think that establishes the requirements that are set out in the statute with respect to his being needed in connection with a war effort, and that the Secretary has determined on some level, even at a great level of generality, the need for his presence. Let me ask another one. Okay, let me ask you the same question that I asked opposing counsel. Okay, so the five-year statute is a gateway as far as you're concerned. If you exceed the five years, you're not entitled to the benefit. If it's less than five years, you're entitled to the benefit. So let me ask you this. Okay, so you're saying that if you serve five years and three days, you don't get the benefit. On the other hand, if you served four years, 364 days, then you would get the benefit and you'd get the escalation clause. Is that what you're saying? Well, yes, you would become eligible to get your zero benefits. Now, whether he gets an escalation clause, I don't agree with that at all. And I can turn to that if you want. But, yes, that's the time demarcation. So shall I turn? I'm sorry, Your Honor, is there more to that question, or shall I turn to the? You can turn to the threshold issue. So let me start with the escalation clause, because that's what Judge Benitez was just asking about. This case doesn't have anything to do with the escalation clause. The escalation concept, which is actually in one of the regulations, it's 0.191, that is tied to Section 4313 of the statute. That talks about the job that you will be placed in once you're, the position you're placed in once you're rehired. That's never been an issue. It certainly wasn't an issue in the district court in this case, whether there's any claim under that provision. And, moreover, the job here is a longshore workers' job. It's true that there are different classifications, but the job, the position, is the same. So what we're talking about then are the benefits associated with becoming registered status. As to that, you have to turn to 4616. 4616 draws a distinction between benefits based on seniority and benefits that are not. And if benefits are not based on seniority, then there is no escalation that you will get no more rights than any worker who did not serve in the military is concerned. That's 4616B. In this case, the undisputed facts in the record show that the benefits, that the registration is dependent upon hours worked. And hours worked are not available on a seat. They're not awarded on a seniority basis. And that specifically is addressed in at least three of the stipulated facts. As I said, this case was largely presented on stipulated facts. The fact that seniority, the seniority in the statute 4303, 12, defines seniority as benefits that are tied to longevity of service. The undisputed facts, let me just mention three. The first is in ER 314, paragraph D15, quote, registration does not occur, I'm skipping some text, because of the length of time a casual longshore worker has been employed in the industry. Right, this is what I'm sure, so I don't understand about this position, that if he hadn't been in the military, he would have accrued hours. And those hours would have then put him in class B status if he had stayed. And the employer and the union have a whole collective bargaining agreement that's designed to implement USERRA. If you hadn't given him some kind of credit or seniority true up for the time he was gone, you would be violating USERRA. So you have a policy designed to prevent that. But given that, I don't see why he's not alleging the denial of a benefit of employment. Your Honor, first, we do have a policy. It addresses USERRA, but it's broader than what USERRA requires. USERRA does not require that we give him credit for hours worked. And that's what I was just trying to address in the context of 4616. It does not require that we give him credit for hours worked unless they are benefits that are associated with seniority. And these benefits are not. Because of the first stipulated fact I mentioned, the next is ER 315, paragraph D20,  and the third is ER 316, paragraph B21, hours paid for work, which can lead to registration, do not correlate with longevity in the industry. So, therefore, and Your Honor, I see I've gone over, but I'd like, I assume Mike can answer this question. The benefits here are an additional benefit which is made available expressly to those in military service. And our policy specifically says that it is, in some respects, broader than what USERRA requires. So because this is a non-seniority benefit, and thus escalator does not apply to it, therefore what we do is we have a policy which says that for uniformed personnel only, who serve five years or more than five years, we will credit you under these formulas for the hours that you would have worked under certain scenarios. This scenario, this allotment is not given to anyone else who's on leave. And so it, therefore, falls within this category that's addressed by these cases in the Seventh Circuit. And elsewhere it would say that USERRA simply doesn't apply to a kind of benefit which is designed to advantage a military person. Okay. And we'll let you go over your time. I'm going to see if my colleagues have any further questions for you. Okay. Thank you very much, Mr. Peterson. Thank you, Your Honor. Mr. Anderson, we'll give you two minutes for rebuttal. Thank you, Your Honor. What Mr. Peterson is advocating is consistent with Cruz and Gross, and that's that the court should apply the better interpretation principle as opposed to the plain meaning principle. And we cited this. Since the predominant nature of the hours credit is to reward for seniority, it is a prerequisite of seniority and is, therefore, a benefit of employment. And that's the Lane case cited at ER-431. Well, your position is this is not an extra USERRA benefit. It is just a benefit that's designed to essentially bring the military person in line with everybody else. It's a compliance mechanism. That's correct, Your Honor. And going on, I know I have limited time, so I just want to touch on something else Mr. Peterson said. He said there's little illumination regarding what the statute requires. I think that's dead wrong. I think the statute very clearly requires that members of the military, like my client, be provided every benefit, any benefit that they would have accrued during the time that they were serving our country. And based upon that clear plain meaning interpretation and the policy here and their own policy set forth at ER-53, it only required, getting back to the documentation, it only required my client to provide available documentation of the length and character of service and the nature of his discharge. He followed their own policy regarding what was required to be reemployed. And, again, touching on something Mr. Pearson said, he claimed he was not reemployed pursuant to the USERRA policy. Our position is he was, and at ER-318 through 320, that's a portion of the statement of uncontroverted facts. It clearly states that it talks about at the time Mr. Balestagi returned in this ER-320, on April 11, 2013, Mr. Balestagi appeared before the Port 180 JPRC and provided discharge papers indicating that he was to be released from active duty Air Force on April 27, 2003. He did that because he was applying for reemployment pursuant to the USERRA policy, and when they reemployed him, they did so pursuant to the USERRA policy. Thank you, Your Honors. Thank you, Mr. Anderson. I want to thank both counsel for the fine arguments this morning, and this matter is submitted.
judges: BRESS, BUMATAY, Benitez